

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

**MAR 2 0 2017**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | | |
|---|---|---|
| ADRIENNE CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 16-0401 (RJL) |
| | ) | |
| BEN CARSON, in his official capacity as | ) | |
| Secretary of the U.S. Department of | ) | |
| Housing and Urban Development,[1] | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION

(March __19__, 2017) [Dkt. #15]

Adrienne Carter ("plaintiff" or "Carter") brings this action against Ben Carson, in his official capacity as Secretary of the U.S. Department of Housing and Urban Development ("defendant" or "HUD"), alleging five counts of workplace discrimination and seeking declaratory relief and damages. Before the Court is defendant's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment [Dkt. #15]. Upon consideration of the pleadings, relevant law, and the entire record herein, the Motion to Dismiss is GRANTED.

## BACKGROUND

Adrienne Carter is an African-American female formerly employed by HUD as a Staff Assistant in the Office of Native American Programs. Am. Compl. for Decl. Relief and Damages ¶¶ 3, 9 ("Am. Compl.") [Dkt. #11]. During the course of her employment at

---

[1]    Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Ben Carson "is automatically substituted as a party" for former Secretary Julian Castro.

HUD, Carter suffered from "a number of medical and physical ailments, including asthma, high blood pressure, which caused blurred vision, a serious stomach disorder, kidney stones and migraine headaches." Am. Compl. ¶¶ 19, 47. As a result of these ailments, it was frequently necessary for Carter to miss work. From "FY2010 to June 2012" Carter "missed 1800 work hours," including 1104 work hours for "medically related" reasons. Am. Compl. ¶¶ 44–45.[2] Some of these absences were unpredictable. "On one occasion, Ms. Carter was rushed from HUD's medical facility to a hospital via ambulance because she was suffering from a serious asthma attack." Am. Compl. ¶ 20.

In early 2010, Carter's supervisor, Terrance Michael Andrews, became concerned about her work performance. Am. Compl. ¶ 10. He discontinued her authorization to telework, placed her on leave restriction, and added an element to her annual performance appraisal which required her to maintain a correspondence log to track correspondence originating in the field offices and at headquarters. Am. Compl. ¶¶ 12, 22–23. In June 2011, Carter received a "minimally satisfactory" rating on a critical element of her performance appraisal, and in August, Andrews placed Carter on a Performance Improvement Plan ("PIP"). Am. Compl. ¶¶ 14–17. In September, Andrews issued Carter a formal letter of reprimand for showing up to work an hour after her reporting time, for taking three hours of leave without prior approval, and for failing to comply with the requirements of her leave restriction. Am. Compl. ¶ 28. In October, Andrews reviewed

---

[2]      To put these absences in perspective, under the formula used by the Office of Personnel Management ("OPM") to calculate the length of the average work year for pay and leave purposes, 1800 hours is roughly ten and one third months. *See* OPM, *Fact Sheet: Computing Hourly Rates of Pay Using the 2,087-Hour Divisor*, https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/computing-hourly-rates-of-pay-using-the-2087-hour-divisor/ (last visited March 19, 2017).

Carter's performance, and although he did not assign her a performance rating, extended the PIP for 90 days.  Am. Compl. ¶ 16.  By the end of the year, Andrews had started "working with the personnel office to remove Ms. Carter." Am. Compl. ¶¶ 30, 34.  Around the same time, Carter requested an accommodation that would permit her to telework.  Am. Compl. ¶ 31.  A few months later, she requested an accommodation that would allow her to report to HUD "later than the core beginning work hours of 7:30 a.m. to 9:30 a.m." Am. Compl. ¶ 36.  Both requests were denied.  Am. Compl. ¶¶ 31, 37–38.  On July 2, 2012, HUD issued a Notice of Proposed Removal for Failure to Maintain a Regular Work Schedule and Failure to Follow Instructions.  Am. Compl. ¶¶ 6, 40.  On September 12, 2012, Carter was removed from her position.  Am. Compl. ¶ 42.

Carter filed two administrative complaints while still employed at HUD.  First, she filed a grievance pursuant to the collective bargaining agreement between her union and HUD.  The grievance initially challenged "the PIP [Andrews] had issued," and at subsequent arbitration proceedings, her removal from HUD.  Am. Compl. ¶¶ 6, 29.  Next, Carter filed an Equal Employment Opportunity ("EEO") complaint.  Am. Compl. ¶ 5.  The EEO complaint alleged violations of the Rehabilitation Act of 1973; the creation of a hostile work environment through, among other things, issuance of the PIP; and, following subsequent amendment, alleged a claim of reprisal addressing the notice of removal issued by HUD.  Am. Compl. ¶¶ 5–6.  The grievance and the EEO complaint were filed on September 19, 2011, and November 18, 2011, respectively.[3]

---

[3]     Plaintiff's amended complaint incorrectly states that the union grievance was filed on September 20, 2011, and that the EEO complaint was filed on November 20, 2011.  Am. Compl. ¶¶ 5, 29.  Although

Carter initially filed this action in February 2016. Her amended complaint, filed in June, alleges five counts of workplace discrimination. Count One alleges that HUD's denial of Carter's request for a reasonable accommodation violated the Rehabilitation Act of 1973. Am. Compl. ¶¶ 46–53. Count Two alleges that HUD's denial of Carter's request for a reasonable accommodation, and her ultimate removal, created a continuing violation the Rehabilitation Act of 1973. Am. Compl. ¶¶ 54–63. Count Three alleges "retaliation," Am. Compl. ¶¶ 64–73, presumably in violation of Title VII of the Civil Rights Act of 1964. Count Four, which has since been abandoned by plaintiff, *see* Opp'n to Mot. to Dismiss Am. Compl. & in Alt. for Summ. J. 1 n.1, 28–29 ("Pl.'s Opp'n") [Dkt. #16], alleged racial discrimination in violation of Title VII, Am. Compl. ¶¶ 74–78. Count Five alleges that HUD subjected Carter to a hostile work environment, also in violation of Title VII. Am. Compl. ¶¶ 79–83. HUD moves to dismiss.

## STANDARD OF REVIEW

HUD moves to dismiss Carter's amended complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

this difference is immaterial to the outcome of this case, because defendant has filed copies of these documents with the Court, *see* Def.'s Mot., Ex. 1 (employee grievance) [Dkt. #15-2]; *id.*, Ex. 3 (EEO complaint) [Dkt. #15-4], and because plaintiff does not dispute the authenticity of these copies, the Court will use the filing dates on these copies rather than those alleged by the amended complaint. *See Demissie v. Starbucks Corporate Office & Headquarters*, 19 F. Supp. 3d 321, 324 (D.D.C. 2014).

that the defendant is liable for the misconduct alleged." *Id.* This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court assumes the plaintiff's factual assertions to be true and draws all inferences in the plaintiff's favor. *See Sissel v. U.S. Dep't of Health & Human Servs.,* 760 F.3d 1, 4 (D.C. Cir. 2014). It "need not, however, accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (per curiam) (alterations and quotation marks omitted). Nor must it "accept legal conclusions couched as factual allegations." *Id.* (citing *Iqbal*, 556 U.S. at 678). "In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity." *Demissie v. Starbucks Corporate Office & Headquarters*, 19 F. Supp. 3d 321, 324 (D.D.C. 2014).

HUD also moves to dismiss for failure to exhaust administrative remedies. "Motions to dismiss for failure to exhaust administrative remedies are properly addressed as motions to dismiss for failure to state a claim." *Scott v. Dist. Hosp. Partners, L.P.*, 60 F. Supp. 3d 156, 161 (D.D.C. 2014); *see also Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (affirming dismissal). In such cases, "[i]t is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies." *Johnson v. Gonzales*, 479 F. Supp. 2d 55, 58 (D.D.C. 2007) (citing *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985)).

## ANALYSIS

### 1. Rehabilitation Act Claims

The first two counts of the amended complaint assert that HUD failed to accommodate plaintiff's disability. "The Rehabilitation Act of 1973 governs employee claims of handicap discrimination against the Federal Government." *Ward v. McDonald*, 762 F.3d 24, 28 (D.C. Cir. 2014) (quotation marks omitted). "Its basic tenet is that the Government must take reasonable affirmative steps to accommodate the handicapped, except where undue hardship would result." *Id.* (quotation marks omitted). The Act provides that "[n]o otherwise qualified individual with a disability" shall be discriminated against by a federal agency "solely by reason of her or his disability." 29 U.S.C. § 794(a). Thus, to prevail on a failure to accommodate claim, a plaintiff must show, at a minimum, that "she was a qualified individual with a disability." *Ward*, 762 F.3d at 31 (citing *Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1307–08 (D.C. Cir. 2010)).

Upon review of the amended complaint, I find that in regard to this threshold requirement, Carter has "essentially 'plead[ed] h[er]self out of court by alleging facts that render success on the merits impossible.'" *Nurriddin*, 818 F.3d at 757 (quoting *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)) (first alteration in original). An employee is not "qualified" under the Rehabilitation Act if her workplace attendance is so infrequent that she is unable to perform her job. *Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994) ("[A]n essential function of any government job is an ability to appear for work[.]"). In her amended complaint, Carter herself states that she "missed 1800 work hours" from "FY2010 to June 2012," attributing 1104 of these missed work hours to "medically related"

causes. Am. Compl. ¶¶ 44–45. Courts in our Circuit have found similarly frequent and repeated absences—even for medical reasons—sufficient to render the complainant "unqualified as a matter of law under the Rehabilitation Act." *Meadows v. Mukasey*, 555 F. Supp. 2d 205, 207 (D.D.C. 2008) (granting summary judgment for federal defendant where plaintiff "missed 295 work days from January 2000 through October 2002"); *see also Doak v. Johnson*, 19 F. Supp. 3d 259, 276–77 (D.D.C. 2014) (finding requested accommodation for medical issues "unreasonable as a matter of law" where plaintiff's "attendance record was all over the place"), *aff'd*, 798 F.3d 1096 (D.C. Cir. 2015); *id.* at 276 (explaining the Act "'does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability'" (quoting *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 949 (7th Cir. 2001) (en banc)). Indeed, our Court of Appeals itself found a plaintiff not "qualified" under the Act where her medical condition caused her to be absent 200 to 500 hours per year for several years. *Carr*, 23 F.3d at 527–30. Here, Carter's self-reported absences exceed that amount, and the amended complaint does not plead that she would be capable of performing the essential functions of her position "with or without" an accommodation. *Ward*, 762 F.3d at 28; *cf. Doak*, 19 F. Supp. 3d at 279 ("Even if she had been granted the accommodation of teleworking or weekend hours, she still would not have been able to perform any work if a migraine struck."). You do not need to be Oliver Wendell Holmes to conclude that someone who cannot "appear for work" does not meet even the "minimum expectations" of federal employment and is "unqualified for *any* position" as a matter of law. *Carr*, 23 F.3d at 530.

If that were not enough, plaintiff's Rehabilitation Act claims must also be dismissed on the independent ground that she failed to adequately allege that she is an "individual with a disability." 29 U.S.C. § 794(a).  The complaint states that Carter suffers from "medical and physical ailments, including asthma, high blood pressure, which caused blurred vision, a serious stomach disorder, kidney stones and migraine headaches for which she was under the care of a physician."  Am. Compl. ¶¶ 19, 47.  These are serious conditions, but "'[d]isability' is a[] term of art under the statute that carries a specific meaning," *Adams v. Rice*, 531 F.3d 936, 943 (D.C. Cir. 2008), and our Circuit has made clear that "[n]ot all individuals having what might commonly be perceived as physical or mental disabilities are protected by the Act," *Desmond v. Mukasey*, 530 F.3d 944, 952 (D.C. Cir. 2008).  A person has a disability within the meaning of the Act only if she has (1) "a physical or mental impairment that substantially limits one or more major life activities"; (2) "a record of such an impairment"; or (3) is "regarded as having such an impairment."  29 U.S.C. § 705(20)(B) (cross-referencing 42 U.S.C. § 12102(1)); *see* *Nurriddin*, 818 F.3d at 756.  The Rehabilitation Act incorporates a nonexhaustive list of "major life activities" such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Yet Carter's amended complaint fails to specify any major life activity that is impacted by her various ailments.  Assuming I could overlook that failing—for example, by construing the invocation of "migraine headaches" as an allegation that her condition limits mental concentration—the amended complaint still fails to allege facts from which I could infer

that any major life activity is *substantially* limited, as required by the statute. *See, e.g.,* *Scott*, 60 F. Supp. 3d at 164 (dismissing claim where breathing "impairment cannot be said to be 'substantially' limiting"); *Massaquoi v. D.C.*, 81 F. Supp. 3d 44, 55 (D.D.C. 2015) (dismissing claim "because there is no allegation that [the] alleged 'anxiety disorder' substantially limits a major life activity"). In light of Carter's failure to allege facts sufficient to support a claim that she is substantially limited in any major life activity, I have no choice but to dismiss the first two counts of her amended complaint.

Perhaps recognizing the inadequacy of her amended complaint, Carter uses her opposition brief to supplement her Rehabilitation Act claims with additional factual allegations, including exhibits, which she claims establish her disability. Pl's Opp'n. 20–24. I cannot consider this new information in testing the legal sufficiency of the complaint against defendant's motion to dismiss, however, because "plaintiff failed to include these allegations in her complaint, and [a] plaintiff may not amend her complaint by the briefs in opposition to a motion to dismiss." *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010), *aff'd*, 424 F. App'x 10 (D.C. Cir. 2011); *see also Durand v. D.C.*, 38 F. Supp. 3d 119, 129 (D.D.C. 2014) (similar). In any event, even if I could consider this information, plaintiff is mistaken in asserting that "there has been a prior determination by the [Merit Systems Protection Board]" that "Carter has a disability." Pl.'s Opp'n 20 (citing Pl.'s Opp'n to Mot. to Dismiss, Ex. A (*Carter v. HUD*, No. CB-7121-14-0018-V-1, 2015 WL 2190610 (M.S.P.B. May 11, 2015)) ¶ 12 [Dkt. #12-1]). I have reviewed the administrative decision plaintiff cites, and it does nothing more than "assume, for purpose of . . . analysis," that plaintiff was disabled. The argument is without merit.

## 2. Title VII Claims

Plaintiff's remaining counts allege that she was subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and then fired in retaliation for reporting on that environment and bringing her Rehabilitation Act claims.   As relevant here, Title VII permits federal government employees to seek judicial redress for certain discriminatory practices upon exhaustion of administrative remedies. *See Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012).  In addition, federal government employees who are covered by collective bargaining agreements containing grievance procedures may get into court after exhausting those procedures. *See id.* at 1349–50.  The Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 7101 *et seq.*, "sets forth how negotiated grievance procedures should interact with statutory employment procedures," *Rosell v. Wood*, 357 F. Supp. 2d 123, 128 (D.D.C. 2004); *see also AFGE, Local 2052 v. Reno*, 992 F.2d 331, 332 (D.C. Cir. 1993).

As an employee of HUD, Carter was covered by CSRA and by the terms of her union's collective bargaining agreement with HUD, the latter of which permits employees to file grievances.  Def.'s Mot., Ex. 6 (grievance procedures) [Dkt. #15-7].  Carter's right of review, therefore, is governed by 5 U.S.C. § 7121(d), which provides, *inter alia*, that "[a]n aggrieved employee affected by a prohibited personnel practice [including a violation of Title VII] which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both."  "An employee is deemed to have made his selection upon either filing an administrative complaint or filing a grievance, and that election is irrevocable." *Koch v. Walter*, 934 F.

10

Supp. 2d 261, 268 (D.D.C. 2013) (citing 5 U.S.C. § 7121(d); 29 C.F.R. § 1614.301(a)); *see Johnson v. Peterson,* 996 F.2d 397, 398–99 (D.C. Cir. 1993).   Accordingly, while Carter technically could file a grievance with her union and also file an EEO complaint, as she did here, she could not expect to successfully pursue both remedies.   The only questions left for me to decide, then, are (1) which remedy Carter irrevocably elected to pursue at the administrative level, and (2) whether she exhausted, through that remedy, the claims she now brings in this Court.

The answer to the first of these questions is obvious on the face of the relevant documents.   Carter filed her union grievance on September 19, 2011.   Def.'s Mot., Ex. 1 (employee grievance) [Dkt. #15-2].   She filed her EEO complaint on November 18, 2011. *Id.*, Ex. 3 (EEO complaint) [Dkt. #15-4].   By filing the grievance first, Carter necessarily elected to pursue the negotiated remedy rather than the statutory remedy.   Her effort to sow some doubt in this regard by asserting that even though "the grievance was dated September 19, 2011, it did not begin to go through the agency's grievance process until the 20ᵗʰ of September 2011," Pl.'s Opp'n 26, is pointless.   Presumably Carter would have me infer from this purported delay that the union grievance was not initiated first because she "told Andrews she was going to the EEO office to file an EEO complaint" also on September 20, 2011.   Am. Compl. ¶ 29.   But that information is irrelevant under the statute and its implementing regulations.   "An election to proceed under a negotiated grievance procedure is indicated by the *filing* of a timely written grievance."   29 C.F.R. § 1614.301(a) (emphasis added).   So too an election to proceed under the EEO remedy, which "is indicated only by the *filing* of a timely written complaint."   *Id.* (emphasis added).   In short,

the dates on the face of Carter's grievance and complaint are conclusive of her election to pursue the negotiated procedure.

Also clear is Carter's failure to exhaust her retaliation and hostile work environment claims through her elected procedure before attempting to bring them in this Court. "A plaintiff fails to exhaust her administrative remedies when the complaint she files in federal court includes a claim that was not raised in the administrative complaint." *Mogenhan v. Shinseki*, 630 F. Supp. 2d 56, 60 (D.D.C. 2009) (citing *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995)). It is evident on the face of the grievance, Def.'s Mot., Ex. 1, and undisputed by the parties, that the grievance did *not* raise the retaliation and hostile work environment claims that were the subject of plaintiff's later EEO complaint, and now of this action. Surprisingly, plaintiff argues that this omission is her saving grace because, in her view, it means that "the grievance procedure did not bar Carter from later filing her EEO complaint." Pl.'s Opp'n 27. But that position, unfortunately, is foreclosed by the statute. Section 7121(d) prevents a party from raising the same "matter" in both a union grievance and an EEO complaint, and "courts have tended to construe the term 'matter' to encompass more than a legal claim and instead to encompass the 'underlying action,' or the 'topics' raised." *Guerra v. Cuomo*, 176 F.3d 547, 550 (D.C. Cir. 1999) (citations omitted). Here, the same underlying actions by HUD—placing Carter on the PIP, denying her requests to work from home and/or report late, and, eventually, terminating her employment—provided the factual basis for the administrative proceedings arising out of Carter's union grievance and for her EEO complaint. Thus, the fact that Carter advanced a different legal theory in her EEO complaint from the one relied upon in her grievance

does not insulate her from the operation of § 7121(d).  She "cannot demonstrate that her EEO complaint involves a 'matter' different from that raised in her union grievance." *Guerra*, 176 F.3d at 552 (affirming dismissal).  The bottom line is that Carter's decision to file the union grievance committed her to exhausting through that procedure all legal claims arising from the set of facts underlying the grievance.  Because she did not exhaust her hostile work environment and retaliation claims through the grievance process, she cannot bring them here.[4]

## CONCLUSION

For the foregoing reasons, the Court will GRANT defendant's Motion to Dismiss.  An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[4]     In light of my conclusion on the exhaustion issue, it is unnecessary for me to reach defendant's argument that plaintiff fails to plead facts adequate to support her hostile work environment claim.